UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LANCE CONLEY,                          )
                                       )
              Plaintiff,               )
                                       )
      v.                               )
                                       )   Case No. 11-CV-3951
OFFICER JOSE A. VELEZ,                 )
OFFICER JOSEPH CEGLAREK,               )   Judge John W. Darrah
OFFICER ROBERTO RUIZ,                  )
and the CITY OF CHICAGO,               )
                                       )
              Defendants.              )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lance Conley filed a complaint against Officers Jose A. Velez, Joseph

Ceglarek, and Roberto Ruiz (collectively, "Defendant Officers"), and the City of

Chicago. Conley alleges in the Complaint Defendant Officers wrongfully arrested him,

specifically alleging: (I) illegal search and seizure, in violation of 42 U.S.C. § 1983;

(II) excessive force in violation of 42 U.S.C. § 1983; (III) a *Monell* policy claim against

the City of Chicago;[1] (IV) failure to intervene in violation of 42 U.S.C. § 1983;

(V) assault and battery under Illinois common law; (VI) intentional infliction of

emotional distress under Illinois common law; (VII) malicious prosecution under Illinois

law; (VIII) false arrest under Illinois law; (IX) *respondeat superior*; and

---

[1] Defendants represent that by agreement with Plaintiff, Count III of Plaintiff's
Complaint, the *Monell* claim, was dropped. (Defs.' Mot. for Summ. J. at 1 n.1.)
Plaintiff, in his response, does not deny this assertion. Accordingly, Count III of the
Complaint is dismissed.

(X) indemnification. Jurisdiction over these claims exists pursuant to 28 U.S.C. §§ 1331 and 1367(a); and venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

Discovery closed on June 29, 2012, and, thereafter, Defendants filed a Motion for Summary Judgment. Specifically, Defendants argue Velez is entitled to summary judgment on Counts II, IV, and V of the Complaint and that Ceglarek and Ruiz are entitled to summary judgment on Counts I, II, IV, V, VI, VII and VIII. (Defs.' Mot. for Summ. J. at 3.)

## BACKGROUND

Local Rule 56.1(a)(3) requires a party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in an opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b)(3)(C) permits additional material facts to be provided by the nonmoving party. Local Rule 56.1(a)(3) then allows the moving party to submit a concise reply to these additional facts. Rule 56.1 requires statements of facts to consist of short, numbered paragraphs. To the extent that a response to a statement of material fact

provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziana v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact which relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

However, the Local Rules do not permit a moving party to provide a reply to a response submitted by the opposing party. To the extent Defendants submitted a reply to Plaintiff's 56.1(b)(3) response, these replies will not be considered.[2]

The following is taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Plaintiff Lance Conley is an American citizen who resided at 1028 North Lavergne, in Chicago, Illinois, on June 28, 2010. (Defs.' 56.1(a)(3) Statement ¶ 6.) The corner of Lavergne and Cortez, located in front of Conley's home, has been a "drug corner" for twenty years. (Pl.'s 56.1(b)(3)(C) Statement ¶ 4.) Conley has a video security system installed in his home. (*Id.* ¶ 3.) Defendant Officers Velez, Ceglarek, and Ruiz were Chicago Police Officers on June 28, 2010, and at all other times relevant. (Defs.' 56.1(a)(3) Statement ¶ 7.) Defendant City of Chicago, a municipal corporation, employs Defendant Officers. Eddie Jefferson was present at the time of the incident giving rise to the complaint on June 28, 2010. (*Id.* ¶ 9.) Both Eddie Jefferson and Conley are black males. (*Id.* ¶ 32.)

---

[2] It should also be noted that in addition to violating the Local Rules by submitting replies to their own statement of material facts, Defendants never requested leave from the Court to submit these replies.

On June 28, 2010, Conley returned to his home from McDonald's with his girlfriend and daughter. (*Id.* ¶ 10.) After eating, Conley left his home to buy cigarettes at a corner store. (*Id.* ¶ 11.) On his way to the store, Conley interacted with neighbors on the street who were discussing basketball. (*Id.* ¶ 12.) During this interaction, Conley noticed a drug transaction occurring 15 to 20 feet away from where he was standing; Conley then moved away from where the neighbors were congregating. (*Id.* ¶¶ 13-14.)

Defendant Officers Velez, Ceglarek, and Ruiz were patrolling this same area on June 28, 2010.[3] (*Id.* ¶ 15.) Velez acted as a "surveillance officer," observing the area for illegal activity and directing other officers in enforcement; Ceglarek and Ruiz were acting as enforcement officers at that time. (*Id.* ¶¶ 16-17.) Enforcement officers perform their duties by responding to what a surveillance officer sees and describes. (*Id.* ¶ 18.) Velez told the enforcement officers he saw an older black male place something by a pole on the north side of Cortez Street, which runs perpendicular to Lavergne Avenue. (*Id.* ¶ 19.) The individual who placed an object at the base of the pole was Eddie Jefferson, and the object was later identified as heroin. (*Id.* ¶ 20.) Ceglarek and Ruiz, as enforcement officers, did not personally see Eddie Jefferson place heroin at the base of the pole on the north side of Cortez Street. (*Id.* ¶ 21.) Velez instructed Ruiz to drive the officers' car to Cortez and Lavergne. (*Id.* ¶ 22.)

The officers pulled up to the group of people congregating on the street and approached them. (*Id.* ¶¶ 23-24.) Velez walked to the northeast corner of Lavergne and Cortez to conduct a search and instructed Ceglarek and Ruiz to detain a male wearing a

---

[3] Defendants erroneously refer to June 28, 2008, though the transcript referred to in support of this statement of fact clearly refers to June 28, 2010.

dark top and dark bottom. (*Id.* ¶¶ 25-26.) On the date of the incident, Conley was wearing a dark shirt and dark pants. (*Id.* ¶ 33.) Ceglarek and Ruiz told the men congregating in the street to put their hands in the air. (*Id.* ¶ 27.) Conley offered his identification to one of the officers, who responded, "You don't need that. We know who we want." (*Id.* ¶ 28.)

Velez showed one of the other officers the heroin he found during his field search; thereafter, two of the individuals in the group were handcuffed, including Eddie Jefferson. (*Id.* ¶¶ 29-31.) These two individuals were told they were under arrest and placed in the police wagon. (Pl.'s 56.1(b)(3)(C) Statement ¶ 17.) Conley was not initially handcuffed. (Defs.' 56.1(a)(3) Statement ¶ 34.) After Velez conducted his search of the area, he returned to where the group was standing, while on his cellular phone. (*Id.* ¶ 35.) One of the enforcement officers told the group that had congregated to get their belongings and leave the area; this group included Conley. (*Id.* ¶ 36.) Conley walked down the sidewalk, approximately 40 feet from his home. (*Id.* ¶ 37.)

Velez approached Conley and grabbed his wrist. (*Id.* ¶ 38.) Velez said to Conley, "you look like a slick-ass-looking nigger, and I don't like slick-looking niggers." (*Id.* ¶ 39.) Conley asked Velez what he was talking about, and the officer responded that it was Conley's lucky day and that Conley would be taking this case. (*Id.* ¶¶ 40-41.) While this transpired, Ceglarek and Ruiz were within 5 to 10 feet of Conley and Velez. (Pl.'s 56.1(b)(3)(C) Statement ¶ 38.) Conley pulled away from Velez, saying he would not take the case; Velez then stepped back, put his hand on his gun, and said, "don't resist." (Defs.' 56.1(a)(3) Statement ¶¶ 42-43.) Conley turned to Ceglarek and Ruiz and said,

"Y'all gonna let this happen? Y'all know I don't have anything to do with this"; but the officers did not respond. (*Id.* ¶¶ 44-45.) Ruiz and Ceglarek did not hear the racist language used by Velez towards Conley. (*Id.* ¶¶ 46-47.)

Velez then searched Conley and handcuffed him. (*Id.* ¶ 48.) Velez got on his cellular phone, walked down the block, and, when he returned, instructed the other officers to release one of the men in the police wagon and put Conley in his place. (*Id.* ¶ 49.) The man initially arrested and then released by the officers was Eddie Jefferson. (*Id.* ¶ 50.) When Jefferson was released from the police wagon, Velez told him it was his lucky day and that he should run. (Pl.'s 56.1(b)(3)(C) Statement ¶ 24.) Prior to being placed in the police wagon, Conley protested to Defendant Officers and others at the scene. (*Id.* ¶ 25.) Conley was processed at the police department and taken to lockup, where he informed Ruiz and Ceglarek that he had a videotape of the incident at his home that would show his innocence. (Defs.' 56.1(a)(3) Statement ¶ 51.)

Throughout the incident, the force used on Conley amounted only to Velez's putting his hands on Conley and arresting him; neither Ruiz nor Ceglarek touched Conley beyond a pat-down at the beginning of the investigation. (*Id.* ¶¶ 52, 54.) However, in Conley's arrest report, Ruiz is listed as the second arresting officer, and Ceglarek is listed as an assisting arresting officer. (Pl.'s 56.1(b)(3)(C) Statement ¶ 37.) Conley did not suffer any physical injuries as a result of his arrest. (Defs.' 56.1(a)(3) Statement ¶ 53.) The video recorded at Conley's home shows only that Velez grabbed Conley's wrist and placed him under arrest. (*Id.* ¶ 55.)

The Cook County State's Attorney's Office pursued criminal charges against Conley, who was found not guilty following a bench trial. (*Id.* ¶ 56.) At a preliminary hearing before the Cook County court, Velez testified that he personally observed Conley for 30-40 seconds before he saw Conley, from a distance of 30 to 35 feet away, stuff a plastic baggie into the base of a stop sign. (Pl.'s 56.1(b)(3)(C) Statement ¶¶ 9, 30.) Velez further testified at this preliminary hearing that he observed Conley walk away from the sign quickly, so he detained Conley. (*Id.* ¶ 10.) Defendant Officers admitted, after watching the video recording, that Conley was not the individual who placed drugs near the intersection of Lavergne and Cortez on June 28, 2010. (*Id.* ¶ 36.) After the arrest and criminal trial, Velez repeatedly visited Conley's house and harassed him. (*Id.* ¶ 34.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

### *Counts I and VIII: Illegal Search & Seizure and False Arrest*

Defendant Officers argue for summary judgment as to Count I of the Complaint, which alleges an illegal search and seizure of Conley in violation of 42 U.S.C. § 1983 on the part of Defendant Officers Ceglarek and Ruiz, and Count VIII, alleging a false arrest by Ceglarek and Ruiz. Defendants argue Conley cannot establish the elements necessary to sustain a claim of illegal search and seizure or a claim of false arrest against Ceglarek and Ruiz.

To succeed on a false arrest claim, a plaintiff must prove he was arrested without probable cause. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). Probable cause exists when the facts and circumstances within an officer's knowledge "and of

which [he has] reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Id.* (citing *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (internal quotations omitted)). The facts are evaluated as they would have seemed to a reasonable person standing in the shoes of an arresting officer. *Id.* at 398-99.

Ceglarek and Ruiz relied on the information purportedly conveyed from Velez, who acted as the "surveillance officer" during the date in question. Ceglarek and Ruiz argue that they arrested a black male in dark clothing based on Velez's description. However, a genuine issue of material fact exists as to what Ceglarek and Ruiz knew when Conley was arrested. While Ceglarek and Ruiz did not hear Velez use racial slurs against Conley, it is possible that, being only 5 to 10 feet away from Conley and Velez, Ceglarek and Ruiz were aware Velez decided it was Conley's "lucky day" and that Conley would take the case. If Ceglarek and Ruiz were aware of Velez's decision to pin the crime on Conley, they lacked the probable cause to arrest him. Therefore, Ceglarek and Ruiz are not entitled to summary judgment as to the false arrest claim, as a reasonable jury could find they lacked the probable cause to arrest Conley.

Similarly, Conley's illegal search and seizure claim (Count I) also hinges on Ceglarek's and Ruiz's perspectives at the time of his arrest. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." Whether or not a search and seizure is reasonable is considered in light of the totality of the circumstances; balancing the

9

intrusion on a person's privacy with a legitimate government interest. *Johnson v. Manitowoc County*, 635 F.3d 331, 334-35 (7th Cir. 2011). The reasonableness of a search and seizure is contemplated based on the officer's perspective at the time of the search. *Id.* Here, a genuine issue of material fact remains as to what Ceglarek and Ruiz were aware of at the time of Conley's arrest and if it was reasonable for them to search and seize Conley after previously acknowledging that they knew which individual they wanted to arrest. Thus, Defendants' Motion for Summary Judgment as to Count I of Conley's Complaint is also denied.

### Count VI: Intentional Infliction of Emotional Distress

Count VI of Conley's Complaint alleges intentional infliction of emotional distress ("IIED") on the part of all three Defendant Officers. Defendants move for summary judgment on that count as it is alleged against Defendants Ceglarek and Ruiz.

An IIED claim requires Conley to show that: (1) Ceglarek's and Ruiz's conduct was extreme or outrageous; (2) the officers must have intended to cause Conley distress or know the high likelihood that it would cause him distress; and (3) the conduct must actually cause severe emotional distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). For a defendant's conduct to be considered outrageous, it must "go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* In determining if conduct is outrageous, courts may also consider the power and influence wielded by the party harassing the plaintiff. *Lujano v. City of Cicero*, 691 F. Supp. 2d 873, 885

(N.D. Ill. 2010) (quoting *Chen v. Mayflower Transit, Inc.*, No. 99 C 6261, 2002 WL

1632412, at *6 (N.D. Ill. July 22, 2002)).

> In situations involving unlawful arrests or excessive force by police officers, there must be more than just a lack of probable cause or some excessive force. To qualify as extreme and outrageous, the force used must be very extreme or cause very severe physical injury. *Whether a false arrest was totally lacking in justification will also be considered.*

*DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1123 (N.D. Ill. 1997) (emphasis added).

In Conley's case, the force used against him was not extreme, and he did not

sustain severe physical injury. However, as discussed above, a factual question remains

as to whether Ruiz and Ceglarek had probable cause to arrest Conley, based on what they

might have known from the interaction between Velez and Conley. If Conley was

arrested without any justification, this could be grounds to support his IIED claim. In

light of this factual issue, Defendants' Motion for Summary Judgment on the IIED claim

is denied.

### Count VII: Malicious Prosecution

Count VII of Conley's Complaint alleges malicious prosecution on the part of

Defendant Officers; Ceglarek and Ruiz again move for summary judgment, arguing that

because Conley cannot establish a lack of probable cause, his malicious prosecution

claim against them cannot survive.

"In order to survive summary judgment, [on a malicious prosecution claim, the

plaintiff] must provide evidence of '(1) the commencement or continuance of an original

criminal or civil judicial proceeding by the defendant; (2) the termination of the

proceeding in favor of the plaintiff; (3) the absence of probable cause for such

proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'" *Dean v. City of Chicago*, No. 09-cv-1190, 2012 WL 3234280, at *8 (N.D. Ill. 2012) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Malice is present where an individual is prosecuted for any other reason than to bring a party to justice. *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E. 2d 835, 842 (Ill. App. 2000). While lack of probable cause does not, by itself, establish the presence of malice, malice may be inferred where there is a lack of probable cause and no evidence refutes that inference. *Id.*

Conley has presented evidence of every element of a malicious prosecution claim against Ceglarek and Ruiz. A criminal proceeding was instituted against him; he was acquitted; and, as a result of this prosecution, Conley alleges he suffered damages. The issue here is whether there was an absence of probable cause, which could be used to infer malice. As previously addressed, there is a factual question as to whether or not Ceglarek and Ruiz possessed adequate probable cause to arrest Conley, or if they decided to simply aide Velez in his inappropriate behavior by choosing to arrest Conley. Based on the proximity between Ceglarek and Ruiz to Conley and Velez when Velez chose to arrest Conley, as evidenced by the surveillance video, a reasonable jury could find that these officers were aware Conley did not commit the crime. Therefore, Defendants' Motion for Summary Judgment as to the malicious prosecution claim is denied.

*Count IV: Failure to Intervene*

Conley alleges in Count IV of the Complaint that Defendant Officers failed to intervene, in violation of 42 U.S.C. § 1983. Defendant Officers move for summary judgment on this claim.

An officer witnessing the use of excessive force by another officer has a duty to take action to stop the improper use of force; a failure to intervene constitutes a violation of the victim's rights. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) *(Yang)*.

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Id.* at 285.

### Ceglarek's and Ruiz's Failure to Intervene

Conley concedes that there was no excessive force used in conjunction with his failure to intervene claim. (Pl.'s Resp. at 6 n.1.) However, Conley argues that Ceglarek and Ruiz had sufficient time to intervene when he was unjustifiably arrested and failed to do so. Ceglarek and Ruiz ignored Conley's pleas when he protested his arrest. While Defendants argue Ceglarek and Ruiz had no reason to know Conley was being unjustifiably arrested, a factual question remains as to what Ceglarek and Ruiz knew at the time Conley was arrested. Based on their proximity to his arrest and what Ceglarek and Ruiz may have been able to hear and see, a reasonable jury could find that Ceglarek

13

and Ruiz knew Conley was being unjustifiably arrested and did nothing to prevent this violation of Conley's rights.

### Velez's Failure to Intervene

Similarly, it is possible Velez had ample opportunity to intervene and prevent Ceglarek and Ruiz from falsely arresting Conley and seizing him, in violation of his constitutional rights. To the extent, as discussed above, a jury might find that Ceglarek and Ruiz violated Conley's rights, a jury might also find that Velez further violated Conley's rights in failing to remedy the situation surrounding Conley's arrest. *See Yang*, 37 F.3d at 285.

Therefore, Defendants' Motion for Summary Judgment on Conley's claim that Defendant Officers failed to intervene, Count IV, is denied.

### *Count II and V: Excessive Force and Assault and Battery*

Defendants argue that Count II of Conley's Complaint, the excessive force claim, and Count V, the assault and battery claim, fail as a matter of law, based on the video evidence presented. In Conley's response, he indicates: "Plaintiff offers no opposition to Defendants' motion with regards to Plaintiff's claims for excessive force and assault and battery and the failure to intervene allegations made in connection with these claims." (Pl.'s Resp. at 6 n.1.) Because Conley offers no opposition to Defendants' Motion for Summary Judgment as to the excessive force and assault and battery claims (Counts II and Count V), Conley waives those claims. "A failure to oppose an argument permits an inference of acquiescence and 'acquiescence operates as a waiver.'" *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (quoting *Cincinnati Ins. Co. v. E.*

*Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001)). Therefore, Defendants' Motion for Summary Judgment as to Counts II and V is granted.

## CONCLUSION

In light of the foregoing analysis, Defendants' Motion for Summary Judgment is granted as to Counts II and V; these claims fail as a matter of law. Defendants' Motion for Summary Judgment as to Counts I, IV, VI, VII, and VIII is denied, as factual questions remain regarding the circumstances surrounding Conley's arrest, including a possible lack of probable cause and what knowledge Ceglarek and Ruiz possessed with regards to the validity of Conley's arrest. Based on the parties' representations in the briefs, Count III of the Complaint is also dismissed.

Date: Oct. 17, 2012

JOHN W. DARRAH
United States District Court Judge